UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:16-CV-00730-TBR

TRINITY VIDEO COMMUNICATIONS, INC.,   Plaintiff,

v.

ELI JOHN CAREY, *et al.*,   Defendants.

MEMORANDUM OPINION

Trinity Video Communications, Inc. filed this breach-of-contract action against five of its former employees after that group left Trinity and accepted employment with one of its competitors. Pursuant to Federal Rule of Civil Procedure 12(b)(2), the former employees move to dismiss Trinity's action for lack of personal jurisdiction over them. Trinity opposes that motion. Having reviewed the record before it, the Court cannot, consistent with constitutional limitations, exercise personal jurisdiction over the former employees based on their sparse contacts with Kentucky. Accordingly, the former employees' Motion to Dismiss, [R. 4], is **GRANTED**.

I.

A.

Trinity Video Communications, Inc. is a Kentucky corporation in the business of offering sophisticated video communication services to other entities on a contract basis. [R. 1-1 at 3, 5, ¶¶ 1, 7 (Complaint).] Trinity employs highly skilled and trained information technology personnel to provide those services. [*Id.* at 5, ¶ 9.] Until recently, Trinity had a contract with Federal Bureau of Investigation to provide on-site IT support at the Criminal Justice Information Services (CJIS) Complex in Clarksburg, West Virginia. [*Id.*, ¶¶ 10–11; *see also* R. 8-1 at 3, ¶ 7 (Mills' Affidavit).]

1

To service that contract, Trinity sought out, through advertisements in a local West Virginia publication, candidates with the necessary experience. [R. 8-1 at 3, ¶ 7.] Eli John Carey, Rodney S. Mills, Crystal Borey, Jennifer Walker, and Michael E. Gower, all of whom reside in West Virginia, responded to the advertisements. [*Id.*, ¶¶ 7–8.] Trinity interviewed them at the CJIS Complex and, in due course, hired them too. [*Id.*] The five employees signed at-will employment agreements, which contained non-competition and non-disclosure clauses and a choice-of-law provision favoring Kentucky, shortly after their respective dates of hire. [R. 1-1 at 11–14 (Carey's Employment Agreement); *id.* at 16–18 (Mills' Employment Agreement); *id.* at 20–23 (Borey's Employment Agreement); *id.* at 25–27 (Walker's Employment Agreement); *id.* at 29–30 (Gower's Employment Agreement).]

While in Trinity's employ, Carey, Mills, Borey, Walker, and Gower worked exclusively at the CJIS Complex in West Virginia. [R. 4-2 at 2, ¶ 4 (Mills' Affidavit); *id.* at 4, ¶ 4 (Borey's Affidavit); *id.* at 5, ¶ 4 (Walker's Affidavit); *id.* at 6, ¶ 4 (Carey's Affidavit); *id.* at 8, ¶ 4 (Gower's Affidavit).] A manager supervised their work and conducted annual performance reviews from that location. [R. 8-1 at 4, ¶¶ 11–12.] Although their compensation, fringe benefits, and company e-mail accounts were administered from Trinity's headquarters in Kentucky, [R. 6-2 at 2–3, ¶¶ 4–6 (Kolb's Affidavit)], none of them has ever travelled there to conduct business, attend meetings, or participate in social events, [R. 8-1 at 5, ¶ 13; *see also* R. 4-2 at 4, ¶ 4; *id.* at 5, ¶ 4; *id.* at 6, ¶ 4; *id.* at 8, ¶ 4].

Unfortunately, in October 2016, the FBI decided not to renew its contract with Trinity. [R. 1-1 at 5, ¶ 11.] Instead, the FBI awarded a similar contract to Trinity's

2

competitor, General Dynamics Information Technology, Inc. (GDIT). [*Id.*] GDIT, in turn, approached Carey, Mills, Borey, Walker, and Gower, and offered to employ them to service the new contract. [*Id.*, ¶ 12.] Trinity immediately contacted Carey, Mills, Borey, Walker, and Gower to advise them that accepting employment with GDIT would violate the non-competition clauses in their respective employment agreements. [*Id.* at 6, ¶¶ 13–14.] Nonetheless, each resigned and accepted GDIT's offer. [*Id.*, ¶ 15.]

**B.**

Shortly thereafter, Trinity filed this breach-of-contract action against Carey, Mills, Borey, Walker, and Gower in Jefferson County Circuit Court, hoping to secure monetary damages and injunctive relief. [*Id.* at 6–8, ¶¶ 16–27.] Relying on 28 U.S.C. § 1441(a), the former employees removed Trinity's action to this Court. [*See* R. 1 (Notice of Removal).] Pursuant to Federal Rule of Civil Procedure 12(b)(2), the former employees seek to dismiss that action for lack of personal jurisdiction over them. [*See* R. 4 (Motion to Dismiss).] Trinity opposes that motion.[1] [*See* R. 6 (Response).]

**II.**

Under Federal Rule of Civil Procedure 12(b)(2), a litigant may challenge the Court's authority to entertain an action against him for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). Personal jurisdiction comes in two forms: general and specific. *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678–79 (6th Cir. 2012). General jurisdiction involves affiliations so "continuous and systematic" with a forum as render the person "essentially at home" there, thus allowing courts in that forum to exercise

---

[1] In addition, Trinity Video Communications, Inc. asks for leave to amend its complaint to bring General Dynamics Information Technology, Inc. into the fold. [*See* R. 5 (Motion for Leave to Amend).] Because the Court dismisses this action for lack of personal jurisdiction, however, Trinity's motion for leave is moot.

3

jurisdiction over "any and all claims" against him. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). Specific jurisdiction, on the other hand, arises from "minimum contacts" between a person and the forum, and permits the forum's courts to adjudicate "issues deriving from, or connected with," those particular contacts. *Id.* (quoting Arthur T. von Mehren & Donald T. Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv. L. Rev. 1121, 1136 (1966)). The instant action relies on the latter of those two types of personal jurisdiction.

In diversity cases, the Court's exercise of specific personal jurisdiction must not only be authorized by the forum state's long-arm statute, but also must comport with the Due Process Clause of the Fourteenth Amendment. *Daimler AG v. Bauman*, ⸺ U.S. ⸺, ⸺, 134 S. Ct. 746, 753 (2014); *accord Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006). Kentucky's long-arm statute permits courts to exercise personal jurisdiction, in pertinent part, over any nonresident who directly or indirectly transacts "any business in this Commonwealth." Ky. Rev. Stat. § 454.210(2)(a)(1); *see also Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57–58 (Ky. 2011). With respect to the due-process inquiry, the Court employs a three-pronged test to determine whether a nonresident has the requisite "minimum contacts" with the forum state:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Means v. U.S. Conference of Catholic Bishops*, 836 F.3d 643, 649 (6th Cir. 2016) (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

4

Ultimately, the nonmoving party "bears the burden of establishing" the existence of personal jurisdiction. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449 (6th Cir. 2012) (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). If the Court decides the jurisdictional question "solely on written submissions," then the nonmoving party's burden is "relatively slight," and it need make "only a *prima facie* showing that personal jurisdiction" is present. *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016) (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007)). "In that instance, the pleadings and affidavits submitted must be viewed in the light most favorable to the [nonmoving party]," and the Court must "not weigh 'controverting assertions of the [movant].'" *Air Prods.*, 503 F.3d at 549 (quoting *Theunissen*, 839 F.2d at 1459).

### III.

Pursuant to Federal Rule of Civil Procedure 12(b)(2), Carey, Mills, Borey, Walker, and Gower move to dismiss this action for lack of personal jurisdiction. [*See* R. 4.] The former employees argue, persuasively, that exercising jurisdiction over them runs afoul of constitutional limitations. [*See* R. 4-1 at 5–7 (Memorandum in Support).] The way the former employees see things, none "purposely availed" themselves of the privilege of either acting or causing a consequence in Kentucky. [*See* R. 8 at 2–4 (Reply).] The Court agrees.[2]

---

[2] Relying on older authority from this District, the parties appear to assume that the reach of Kentucky's long-arm statute is coterminous with due process boundaries. [*Compare* R. 4-1 at 5–6 (Memorandum in Support) (citing *Hillerich & Bradsby Co. v. Hall*, 147 F. Supp. 2d 672 (W.D. Ky. 2001)), *with* R. 6 at 4 (Response) (citing *Info-Med, Inc. v. Nat'l Healthcare, Inc.*, 669 F. Supp. 793 (W.D. Ky. 1987)).] In light of the Kentucky Supreme Court's decision in *Caesar Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51 (Ky. 2011), however, that proposition no longer holds true. *Id.* at 56 ("[A]n examination of the long-arm statute discloses no language indicating that its provisions should, *per se*, be construed as coextensive with the limits of federal due process."); *accord Philmo, Inc. v. Checker Food Holding Co.*, No. 1:15-CV-00098-JHM, 2016 WL 1092862, at *2 (W.D. Ky. Mar. 21, 2016). Nonetheless, the Court

"'Purposeful availment' is 'the constitutional touchstone of personal jurisdiction.'" *AlixPartners, LLP*, 836 F.3d at 550 (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002)). It ensures that "a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts or of the 'unilateral activity of another party or third person.'" *Air Prods.*, 503 F.3d at 551 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Therefore, a nonresident "who deliberately engages in 'significant activities within a [s]tate' or creates 'continuing obligations between himself and residents of the forum' satisfies this requirement." *AlixPartners, LLP*, 836 F.3d at 550 (quoting *Burger King Corp.*, 471 U.S. at 475–76).

The mere existence of a contract between a resident of the forum state and a nonresident is insufficient to subject him to the jurisdiction of the forum's courts. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000). Instead, "prior negotiations and contemplated future consequences, along with the terms of the contract and parties' actual course of dealing . . . must be evaluated" to determine whether the nonresident's conduct satisfies the purposeful availment prong. *Burger King Corp.*, 471 U.S. at 479. No single factor predominates, and the Court must weigh "all of the facts and circumstances of the parties' business relationship . . . as a whole." *Hillerich & Bradsby Co. v. Hall*, 147 F. Supp. 2d 672, 676 (W.D. Ky. 2001).

Turning to the facts of this case, the former employees' connections to the Commonwealth are simply too attenuated for a Kentucky court to exercise personal

---

assumes, for the sake of argument, that Kentucky's long-arm statute would allow for the exercise of specific personal jurisdiction over the former employees. *See Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012); *Guangzhou Consortium Display Prod. Co. v. PNC Bank, N.A.*, 924 F. Supp. 2d 800, 807 n.4 (E.D. Ky. 2013).

jurisdiction over them.  To be sure, each of the former employees signed an at-will employment agreement with a Kentucky corporation, and those contracts call for the application of Kentucky law.  In addition, compensation, fringe benefits, and company e-mail accounts were administered from Trinity's headquarters in Kentucky.  Those connections tend to support the presence of personal jurisdiction.  *See Numeric Analytics, LLC v. McCabe*, 161 F. Supp. 3d 348, 355 (E.D. Pa. 2016).

However, there are far more substantial considerations on the other side of the scale.  For example, all of the former employees resided in West Virginia.  None of them sought employment in Kentucky.  Instead, Trinity solicited, interviewed, and hired them in West Virginia to perform work exclusively at the CJIS Complex there.  A manager supervised their work from that location.  None of them ever travelled to Kentucky to conduct business, attend meetings, or participate in social events.  All things considered, the former employees' limited connections to Kentucky fall short of establishing purposeful availment.  *See Calphalon*, 228 F.3d at 722–23; *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 794–97 (6th Cir. 1996); *Hillerich*, 147 F. Supp. 2d at 676–78.

### IV.

Eli John Carey, Rodney S. Mills, Crystal Borey, Jennifer Walker, and Michael E. Gower's Motion to Dismiss, [R. 4], is **GRANTED**, and Trinity Video Communications, Inc.'s Motion for Leave to Amend, [R. 5], is **DENIED AS MOOT**.

An appropriate order and judgment shall issue.

Date:

cc:      Counsel of Record